Case 4:20-cv-02738   Document 28   Filed on 01/03/22 in TXSD   Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
January 03, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAMES ALSTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:20-CV-02738 |
| | § | |
| S & P GLOBAL, INC., | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER

**I.   INTRODUCTION**

Pending before the Court is the defendant's, S & P Global, Inc., motion for summary judgment (Dkt. No. 18). The plaintiff, James Alston, filed a response to the defendant's motion (Dkt. No. 21), and the defendant filed a reply (Dkt. No. 23). The defendant also filed a motion to strike the plaintiff's summary judgment evidence (Dkt. No. 22). The plaintiff filed a response in opposition (Dkt. No. 24), and the defendant filed a reply (Dkt. No. 26). After reviewing the motions, the responses, the pleadings, the record, and the applicable law, the Court determines that the defendant's summary judgment motion should be **GRANTED IN PART** and **DENIED IN PART**. Additionally, the defendant's motion to strike is **DENIED**.

**II.   FACTUAL BACKGROUND**

The defendant is a New York-based corporation that provides market data and analytics to investors. On July 18, 2011, the defendant hired the plaintiff, a black male, as a Business Development Manager, in which capacity he reported to Natalya Naidoo. In 2014, Naidoo promoted the plaintiff to North America Sales Director, a supervisory position in which he

managed an eight-person sales team. Around that time, Naidoo voluntarily left the defendant and returned in April 2018 as Senior Director of North American Regional Sales, a position above that held by the plaintiff. Between January and April 2018, the plaintiff reported to Marc Karstaedt.

On May 11, 2018, Tammy Hughes, one of the plaintiff's direct reports, submitted a complaint of race and gender discrimination to the defendant's human resources (HR) department. Hughes, a black female, alleged that she had not been invited to a company event, whereas a similarly senior white, male colleague was invited. She also alleged that the sales commissions plan set by the defendant discriminated against her because of her pregnancy, and she later added that Naidoo disparaged her competency to Hughes' colleagues in a racially discriminatory manner. The defendant's head of HR interviewed the plaintiff on June 4, 2018, while investigating Hughes' complaint. Sometime after his interview, the plaintiff informed Naidoo of his participation in the investigation. Although there is no evidence that the plaintiff spoke in support of Hughes' allegations, in the interview or otherwise, the plaintiff conveyed to Naidoo that he disagreed with her negative assessment of Hughes' qualifications.

In June 2018, Naidoo began meeting with the plaintiff to discuss his team's performance and his performance as a supervisor. The plaintiff also met with Naidoo and Karstaedt in early July 2018. According to Karstaedt, the plaintiff exhibited certain performance issues between January and April 2018, specifically: difficulty forecasting sales in the defendant's Salesforce system, poor handling of a defendant-wide technology implementation, and struggling to sell two new product lines. It is unclear, however, when Karstaedt informed Naidoo of these issues. Additionally, it is undisputed that in 2017 the plaintiff received a performance rating of "full achievement."

According to Naidoo, sometime after April 2018 (she does not specify when), she also began noticing issues with the performance of the plaintiff's team and his management of the team. Specifically, the plaintiff's direct reports were regularly showing up late for work, generating customer complaints, failing to timely complete their assignments, and displaying poor attitudes.

On July 23, 2018, the plaintiff informed Naidoo that he believed her recent "coaching" was a form of targeting, arising from his disagreement with her assessment of Hughes and his participation in the investigation of her complaint. He also told Naidoo he believed she was disparaging him to his direct reports and soliciting specific negative responses from them about his performance. The next day, the plaintiff reported his concern that Naidoo was retaliating against him to Amanda Madrid, an HR employee. However, there is no evidence that the defendant investigated his complaint.

In early August 2018, Naidoo and Lamadrid prepared a 60-day performance improvement plan (PIP) for the plaintiff, which Karstaedt reviewed and approved. The defendant placed the plaintiff on the PIP on August 16, 2018. The PIP included objective improvement metrics for the plaintiff's team, such as a minimum number of monthly business development meetings and calls, accuracy metrics for sales forecasts, and timelines for completing customer renewals. The PIP also called for the plaintiff's team to reduce customer complaints and to submit a "growth plan" for their sales region. The PIP's more subjective goals included better training and developing of team members, ensuring that the team demonstrated certain company values, and improving communication and collaboration.

On September 27, 2019, the plaintiff met with Naidoo and Lamadrid to discuss his progress on the PIP. Naidoo indicated continuing issues with the plaintiff's team, including: continued mishandling of customer accounts; a higher volume of customer complaints than other sales teams

received; continued conflicts among team members; the team's overall negative attitude; and failure to submit specific written work product requested in the PIP.  There is evidence, however, that the plaintiff was exceeding his individual sales target at this point.  In October 2018, Naidoo and Karstaedt met to discuss the plaintiff's performance and concluded that he had not met the requirements of the PIP.  After consulting with HR, Karstaedt and Naidoo decided to terminate the plaintiff's employment. The defendant terminated him on October 29, 2018.

On February 28, 2019, the plaintiff filed a charge of discrimination with the Texas Workforce Commission (TWC), alleging that the defendant had discriminated and retaliated against him in violation of Title VII of the federal Civil Rights Act.  On April 30, 2020, the TWC notified the plaintiff of his right to file a civil action concerning the allegations in his charge.  The plaintiff filed suit in Texas state court on June 26, 2020, asserting claims of race discrimination, hostile work environment, and retaliation, all under Chapter 21 of the Texas Labor Code. The defendant timely removed the suit to this Court on diversity grounds. The defendant now moves for summary judgment under Fed. R. Civ. P. 56.  The defendant also moves to strike sections of the affidavits offered by the plaintiff in his response to the summary judgment motion.

### III.     CONTENTIONS OF THE PARTIES

The defendant contends that summary judgment is warranted on the plaintiff's retaliation claim because he cannot establish *prima facie* causation and, alternatively, he cannot show that the defendant's articulated reason for terminating him was pretextual.  The defendant also argues that the plaintiff's race discrimination and hostile work environment claims should be dismissed because he did not sufficiently allege them in his charge of discrimination.  Alternatively, the race discrimination claim should be dismissed because the plaintiff cannot show more favorable treatment of a similarly situated individual outside of his protected class.  The defendant also

asserts that the plaintiff has failed to rebut the defendant's stated non-discriminatory reasons for its adverse employment actions. As to the hostile work environment claim, the defendant argues that there is no evidence connecting Naidoo's alleged harassment to the plaintiff's protected characteristic and, further, that the conduct is not sufficiently severe or pervasive to be actionable.

Concerning his retaliation claim, the plaintiff argues that there is sufficient evidence to raise a fact issue as to both causation and pretext. The plaintiff also responds that he exhausted his administrative remedies as to his race discrimination and hostile work environment claims. Additionally, on his race discrimination claim, he identifies an adequate comparator and argues that, in any case, additional circumstantial evidence raises a triable issue as to the defendant's discriminatory motive. As to his hostile work environment claim, the plaintiff also contends that the evidence supports a genuine fact issue concerning the challenged prima facie elements and the legitimacy of the defendant's offered reasons for the alleged harassment.

IV.  **SUMMARY JUDGMENT STANDARD**

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party bears the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also Martinez v. Schlumberger*, *Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Id.* (internal citations omitted). It may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d 401, 405 (5th Cir. 2003).

"A fact is material only if its resolution would affect the outcome of the action, . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether a genuine issue of material fact has been established, a reviewing court is required to construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nonetheless, a reviewing court is not permitted to "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (quoting *Morris*, 144 F.3d at 380). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, (1986)).

## V. ANALYSIS & DISCUSSION[1]

### a. Retaliation under the TCHRA

The plaintiff asserts a claim for retaliation under the Texas Commission on Human Rights Act (the TCHRA or the Act). *See* Tex. Lab. Code § 21.055. In a retaliation case under the Act, the plaintiff must first make a prima facie showing that: 1) he engaged in a protected activity; 2) an adverse employment action occurred; and 3) a causal link existed between the protected activity and the adverse action. *Pineda v. United Parcel Service, Inc.*, 360 F.3d 483, 487 (5th Cir. 2004).[2] Under the familiar *McDonnell-Douglas* framework, once the plaintiff makes a prima facie case, the burden shifts to the defendant to demonstrate a legitimate purpose for the employment action. *Id.* If the defendant meets this burden, then the "the plaintiff must prove that the employer's stated reason for the adverse action was merely a pretext for the real, discriminatory purpose" and that the plaintiff would not have been terminated "but for" engaging in the protected activity. *Id.*

####  i. Whether the Plaintiff Has Established a Prima Facie Case of Retaliation

Challenging the plaintiff's prima facie case, the defendant asserts there is no evidence of a causal link between the plaintiff's protected activity and the adverse actions against him. At the prima facie stage, a plaintiff can establish causation simply by showing close enough timing

---

[1] The Court determines that the defendant's motion to strike to the plaintiff's summary judgment evidence is without merit and should be denied. Therefore, in ruling on summary judgment, the Court will consider all the evidence in the record. The defendant's evidentiary objections are overruled without prejudice to renewed evidentiary objections concerning admissibility during trial.

[2] Because claims brought under Chapter 21 of the Act are analogous to Title VII claims, courts treat both sets of claims similarly and apply the same federal legal framework to both. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 285 n.13 (5th Cir. 2004).

between his protected activity and his adverse employment action. *Garcia v. Prof. Contract Serv.'s, Inc.*, 938 F.3d 236, 243 (5th Cir. 2019). Here, it is undisputed that the protected activity—the plaintiff's participation in the Hughes investigation—occurred on June 4, 2018.[3] The defendant placed the plaintiff on a PIP on August 16, 2018, and terminated him on October 29, 2018. Further, the plaintiff's affidavit and deposition testimony show that he informed Naidoo of his participation in the Hughes investigation shortly after he was interviewed. The Court is of the opinion that the plaintiff has established prima facie causation, the only element challenged by the defendant.

        ii.        Whether the Defendant has Stated a Legitimate Reason for the Adverse Actions

The burden now shifts to the defendant to demonstrate a legitimate purpose for its employment actions. *Id.* The Court finds that the performance issues identified by Karstaedt and Naidoo in their affidavits and accompanying exhibits support a facially legitimate reason for placing the plaintiff on the PIP on August 16, 2018.[4] There is also evidence that the plaintiff had continued difficulties managing his sales team after he was placed on the PIP. For instance, the plaintiff's mid-point review indicated continuing customer complaints, conflicts among the plaintiff's direct reports, the overall negative attitude exhibited by the plaintiff's team, and the

---

[3] The plaintiff's formal participation in the Hughes investigation undoubtedly constitutes protected activity under the Act. But there is no evidence that he engaged in protected activity by *opposing* the defendant's unlawful discrimination. To establish that he opposed unlawful discrimination against Hughes, the plaintiff had to offer evidence that he had a "reasonable belief that the practices he opposed were unlawful." *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996). Yet nothing in the record suggests he believed that Naidoo's or the defendant's conduct toward Hughes was discriminatory—only that he disagreed with Naidoo's assessment of Hughes' qualifications. Thus, the plaintiff's purported discussion with Naidoo as to Hughes' competence is not a protected activity from which a retaliation claim might flow.

[4] Under the Act's anti-retaliation provisions, courts construe "adverse employment actions" more broadly than "ultimate employment decisions" to include any action that "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007).

team's failure to submit specific written work product requested in the PIP. The Court, therefore, finds that the defendant has demonstrated a facially legitimate reason for terminating the plaintiff.

### iii. Whether the Defendant's Stated Reasons were Pretextual

The burden now shifts back to the plaintiff to establish a fact issue as to whether the adverse actions "would not have occurred 'but for' the employer's retaliatory motive." *Feist v. Louisiana, Department of Justice, Office of the Attorney General*, 730 F.3d 450, 454 (5th Cir. 2013). "The combination of suspicious timing with other significant evidence of pretext, can be sufficient to survive summary judgment." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999). For instance, "[t]his standard can be met when the plaintiff had highly positive performance reviews up until the complaint was leveled against the defendant, and then suffered a sharp decline in treatment immediately after the protected conduct occurred." *United States ex rel. King v. Solvay Pharmaceuticals, Inc.*, 871 F.3d 318, 334 (5th Cir. 2017) (internal citations omitted).

The Court finds that, viewing the evidence in its totality and in the light most favorable to the plaintiff, there is a genuine issue of fact as to whether the defendant's stated reasons were pretextual. There is evidence that the plaintiff had positive performance reviews until around the time of his participation in the Hughes investigation, and that he was exceeding his annual sales target when he was terminated. Additionally, the plaintiff cites statements from Naidoo suggesting that she was upset that Hughes made her discrimination complaint and that she believed the plaintiff should have prevented Hughes from doing so. Because the plaintiff has established a triable issue concerning pretext, the defendant's summary judgment motion as to retaliation should be denied.

### b. Whether the Plaintiff Exhausted his Administrative Remedies as to the Race Discrimination and Hostile Work Environment Claims

Turning to the plaintiff's race discrimination and hostile work environment claims, the Court first addresses the defendant's argument that these claims should be dismissed because he did not sufficiently allege them in his charge of discrimination. The Fifth Circuit "interprets what is properly embraced in review of a Title VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006). Here, in addition to checking the "Race" box on the charge, the plaintiff also stated that he experienced both unlawful discrimination and retaliation in violation of Title VII. Given the mandate to construe administrative charges liberally, the Court determines that the plaintiff exhausted his administrative remedies as to the race discrimination and hostile work environment claims.

### c. Race Discrimination under the TCHRA

Under the TCHRA, it is unlawful for an employer to discriminate against an employee on the basis of race or color. Tex. Lab. Code § 21.051. Where, as here, the plaintiff seeks to establish the defendant's discriminatory intent by circumstantial evidence, the *McDonnell Douglas* framework also applies. However, unlike with retaliation, the plaintiff need only show that race or color was a "motivating factor" in the defendant's employment decision. *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 440 (5th Cir. 2012).

To establish a prima facie case of discrimination, the plaintiff must show that: (1) he is a member of a protected class, (2) he is qualified for the position, (3) he suffered an adverse employment action, and (4) others outside the class who are similarly situated were treated more favorably. *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). The defendant urges that

the plaintiff has failed to identify a similarly situated individual, outside of his protected class, whom the defendant treated more favorably. In response, the plaintiff identifies Kelly Bryant-Dotson, the plaintiff's direct report, as an adequate comparator. The plaintiff cites Naidoo's admission that she did not discipline Ms. Bryant-Dotson for sending a "political" email and displaying provocative signage at her desk, whereas she held the plaintiff responsible for not addressing Bryant-Dotson's infractions and took adverse actions against him on those grounds.

As a threshold matter, the plaintiff offers no evidence that Bryant-Dotson's race was different from his. However, even if she were outside of the plaintiff's protected class, the evidence does not support equating Bryant-Dotson and the plaintiff as similarly situated employees. Instead, the evidence shows that the plaintiff's responsibilities as a director differed significantly from those of Bryant-Dotson, whom he supervised. It follows that the defendant had different expectations for the plaintiff and different metrics by which to evaluate him. Thus, the plaintiff's attempt to compare his treatment with that of Bryant-Dotson does not raise a triable fact issue.

The plaintiff asserts, however, that other circumstantial evidence of the defendant's discriminatory intent is sufficient for the claim to survive summary judgment. *See Goudeau v. National Oilwell Varco*, 793 F.3d 470, 475 (5th Cir. 2015). Specifically, the plaintiff cites Naidoo's statement to him that it would be impossible for her to discriminate against a black employee because her father was a South African Indian. This statement, allegedly made when Naidoo learned of Hughes' discrimination complaint, fails because: (1) it implies, at most, Naidoo's beliefs about herself, not discriminatory animus toward a protected class of employees, and (2) even if it did show a general discriminatory animus, this single remark cannot create a triable issue concerning discriminatory intent. *Phillips v. TXU Corp.*, 194 F. App'x. 221, 228 (5th

Cir. 2006) (citing *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 577 (5th Cir. 2003)). Notably, the plaintiff does not make any mention of race discrimination in his declaration; in fact, he testified in his deposition that he was not alleging race discrimination, only retaliation. In sum, the plaintiff has not created a fact issue as to whether his race motivated the defendant's employment decisions. Accordingly, the race discrimination claim must be dismissed.

### d. Hostile Work Environment under the TCHRA

The plaintiff also brings a hostile work environment claim under the TCHRA. A hostile work environment claim "entails ongoing harassment, based on the plaintiff's protected characteristic, so sufficiently severe or pervasive that it has altered the conditions of employment and created an abusive working environment." *Anderson v. Houston Comm. College Sys.*, 458 S.W.3d 633, 646 (Tex. App.—Houston [1st Dist.] 2015, no pet.). "In determining whether a hostile work environment exists, courts look to all of the circumstances, including the frequency of the discriminatory conduct and whether it unreasonably interfered with the employee's work performance." *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 806 (Tex. 2010).

The defendant argues that there is no evidence connecting Naidoo's alleged harassment to the plaintiff's protected characteristic and, additionally, that the alleged conduct was not sufficiently severe or pervasive to be actionable. In response, the plaintiff cites Naidoo's statements both to him and others questioning Hughes' qualifications, which preceded her discrimination complaint. But the issue is whether Naidoo unlawfully harassed the *plaintiff*, not Hughes.

On that score, the plaintiff alleges that Naidoo began harassing him due to his advocacy for Hughes and that the harassment escalated after he participated in the Hughes investigation. The plaintiff testifies that Naidoo arranged meetings with his colleagues in which she attempted

to solicit negative comments about him. Yet while there is some evidence that Naidoo's conduct was retaliatory, the plaintiff offers no evidence that she demonstrated racial animus against him. What remains is the plaintiff's mere unsupported allegation that Naidoo's alleged harassment was based on his protected characteristic. That alone is not sufficient to survive summary judgment on a race-based hostile work environment claim. *San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 138 (Tex. 2015).[5] Because the plaintiff cannot meet his summary judgment burden, the claim must be dismissed.

## VI. CONCLUSION

Based on the foregoing analysis and discussion, the defendant's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. The Court **GRANTS** summary judgment as to the plaintiff's race discrimination and hostile work environment claims and **DENIES** summary judgment as to his retaliation claim. The defendant's motion to strike summary judgment evidence is **DENIED**.

It is so **ORDERED**.

SIGNED on January 3, 2022, at Houston, Texas.

Kenneth M. Hoyt
United States District Judge

---

[5] Also relevant is the plaintiff's own deposition testimony that "this lawsuit is about retaliation," not discrimination related to membership in a protected class. To the extent the plaintiff seeks to make a showing of "retaliatory hostile work environment," he did not plead such a claim and, in any case, the claim has not been recognized in either Texas or the Fifth Circuit. *See, e.g.*, *In re Parkland Health & Hosp. Sys. Litigation*, No. 05-17-00670-CV, 2018 WL 2473852, at *8 (Tex. App.—Dallas June 4, 2018, no pet.) (mem. op.); *Montgomery-Smith v. George*, 810 F. App'x 252, 258 (5th Cir. 2020) (per curiam).